BRUCE A. HARLAND, Bar No. 230477
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
Telephone (510) 337-1001
Fax (510) 337-1023

WILLIAM T. HANLEY, Bar No. 327126
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
Telephone (213) 380-2344
Fax (213) 443-5098

E-Mails: courtnotices@unioncounsel.net
bharland@unioncounsel.net
whanley@unioncounsel.net

*Attorneys for Defendants*
*SERVICE EMPLOYEES INTERNATIONAL UNION – UNITED HEALTHCARE WORKERS WEST and DAVE REGAN*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CALIFORNIA DIVISION

CALIFORNIA PRIMARY CARE ASSOCIATION, SHASTA COMMUNITY HEALTH CENTER, HILL COUNTRY COMMUNITY CLINIC, MOUNTAIN VALLEYS HEALTH CENTERS, CENTRO DE SALUD DE LA COMUNIDAD DE SAN YSIDRO, INC., and MCCLOUD HEALTHCARE CLINIC, INC.,

Plaintiffs,

v.

SERVICE EMPLOYEES INTERNATIONAL UNION – UNITED HEALTHCARE WORKERS WEST and DAVE REGAN,

Defendants.

No. 2:26-CV-03311-DC-JDP

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: January 15, 2027
Time: 1:30 pm
Dept.: Courtroom 10, 13th Floor.
Judge: Hon. Dena Coggins (DC)

Demand for Jury Trial

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

To Plaintiff and Counsel of Record:

PLEASE TAKE NOTICE that on January 15, 2027, at 1:30 p.m., or as soon as counsel can be heard, in Courtroom 10, 13th Floor, of the Robert T. Matsui United States Courthouse, located at 501 I Street, Sacramento, CA 95814, Defendants SEIU United Healthcare Workers-West and Dave Regan hereby move this Court for an order of dismissal of all counts and claims set out in Plaintiffs' complaint, on the grounds that Plaintiffs lack standing to bring this lawsuit, pursuant to Federal Rule of Civil Procedure 12(b)(1), and that Plaintiffs fail to state claims upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Meet and Confer Requirement:

The undersigned hereby certifies that, on November 23, 2026, William T. Hanley, Counsel for Defendants, and Counsel for Plaintiffs, Emmet P. Ong and Celeste X. Charlet, met and conferred via email and telephone to discuss the substance of this Motion. The parties were not able to reach an agreement on any amendments to the Complaint.

Dated: November 23, 2026

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By: */s/ William T. Hanley*
BRUCE A. HARLAND
WILLIAM T. HANLEY

*Attorneys for Defendants*
*SERVICE EMPLOYEES INTERNATIONAL UNION – UNITED HEALTHCARE WORKERS WEST and DAVE REGAN*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. ARGUMENT ........ 4

A. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION ........ 4

1. Legal standard for motion to dismiss under Rule 12(b)(1) ........ 4

2. Plaintiffs lack standing to bring a claim under the RICO statute because they cannot demonstrate direct and proximate injury ........ 4

B. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........ 6

1. Legal standard for motion to dismiss under Rule 12(b)(6) ........ 6

2. Plaintiffs' claims are subject to the heightened fraud pleading standard of Federal Rule of Civil Procedure 9(b) ........ 7

3. Plaintiffs do not allege any predicate acts which would support a RICO extortion claim ........ 8

a. Exertion of economic pressure to obtain a "lawful and legitimate bilateral agreement" such as a union neutrality agreement is not extortion ........ 9

b. Plaintiffs fail to attribute a "property-obtaining" objective to Defendants ........ 11

c. CPCA does not allege sufficient facts to state a claim for violation of the Travel Act ........ 16

4. Plaintiffs do not allege any predicate acts sufficient to support a RICO bribery claim ........ 16

5. Plaintiffs generally fail to plead facts which would establish that Defendants were part of an "association-in-fact" enterprise ........ 18


WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

## TABLE OF CONTENTS (cont'd)

**Page**

6. Plaintiffs generally fail to plead facts which would establish that Defendants engaged in a pattern of criminal behavior ....20

    a. Plaintiffs do not meet the "continuity" element of RICO's "pattern" requirement ....20

7. Plaintiffs' request for injunctive relief fails as a matter of law ....21

8. Defendants' conduct is protected under the *Noerr-Pennington* doctrine ....22

9. Because Defendants' conduct, as alleged, is arguably protected by the National Labor Relations Act, Plaintiffs' claim is preempted ....23

C. IF THE COURT DECIDES TO DISMISS THE COMPLAINT, PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND ....24

IV. CONCLUSION ....25



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Abbott Laboratories v. Garnder*,
387 U.S. 136 (1967) ... 4

*Adcock v. Freightliner LLC*,
550 F.3d 369 (4th Cir. 2008) ... 10, 24

*Alan Neuman Productions, Inc. v. Albright*,
862 F.2d 1388 (9th Cir. 1988) ... 7

*Allen v. Wright*,
468 U.S. 737 (1984) ... 4

*Am. Fed'n of Gov't Emps. Council 214 v. Fed. Labor Relations Auth.*,
835 F.2d 1458 (D.C. Cir. 1987) ... 11

*Am. Fed'n of Gov't Emps. Local 1816 v. Fed. Labor Relations Auth.*,
715 F.2d 224 (5th Cir. 1983) ... 11

*Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge*,
403 U.S. 274 (1971) ... 23

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 6

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ... 6

*Bd. Of City Comm'rs v. Liberty Grp.*,
965 F.2d 879 (10th Cir. 1992) ... 19

*Behringer v. Cal. Polytechnic State Univ.*,
No. 5:23-cv-00934-JFW (SK), 2023 U.S. Dist. LEXIS 186513 (C.D. Cal. Sep. 15, 2023) ... 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ... 6

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
727 F.3d 917 (9th Cir. 2013) ... 7

*Block v. Snohomish Cnty.*,
733 F. App'x 884, 888-89 (9th Cir. 2018) ... 14

*Boland v. Wasco, Inc.*,
50 F.Supp. 3d 1 (D.D.C. 2014) ... 20

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

**TABLE OF AUTHORITIES (cont'd)**

**Page**

*Boone v. Redevelopment Agency of City of San Jose*,
841 F. 2d 886 (9th Cir. 1988) ....................22

*Boyle v. United States*,
556 U.S. 938 (2009)....................18

*Brennan v. Chestnut*,
973 F.2d 644 (8th Cir. 1992) ....................23, 24

*Brokerage Concepts v. United States Healthcare*,
140 F.3d 494 (3d Cir. 1998)....................9, 11

*Brown v. Keystone Consol. Indus., Inc.*,
680 F. Supp. 1212 (N.D. Ill. 1988) ....................24

*Burger v. Kuimelis*,
325 F. Supp. 2d 1026 (N.D. Cal. 2004) ....................5

*Burlington N. Santa Fe Ry Co. v. Int'l Bhd. of Teamsters Local 174*,
203 F.3d 703 (9th Cir. 2000) ....................21

*Butchers' Union, Local No. 498 v. SDC Inv., Inc.*,
631 F. Supp. 1001 (E.D. Cal. 1986)....................24

*Cal. Architectural Bldg. Prod. v. Franciscan Ceramics, Inc.*,
818 F.2d 1466 (9th Cir. 1987) ....................24

*Cato v. United States*,
70 F.3d 1103 (9th Cir. 1995) ....................24

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001)....................18

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1122 ....................4

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002) ....................5

*Cintas Corp. v. Unite Here*,
601 F.Supp.2d 571 (S.D.N.Y. 2009)....................11, 16

*City & Cty. of S.F. v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020) ....................5

*Clapper v. Amnesty International*,
568 U.S. 398 (2013)....................4

*In re ClassicStar Mare Lease Litig.*,
727 F.3d 473 (6th Cir. 2013) ....................19



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

**TABLE OF AUTHORITIES (cont'd)**

**Page**

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) ....6

*Cook-Illinois Corp. v. Teamsters Local No. 777*,
No. 11-cv-8884, 2012 WL 1655976 (N.D. Ill. May 10, 2012)....10

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
711 F. Supp. 2d 1074 (C.D. Cal. 2010) ....23

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) ....7

*Empress LLC v. City and County of San Francisco*,
419 F. 3d 1052 (9th Cir. 2005) ....22

*Fitzgerald v. Chrysler Corp.*,
116 F.3d 225 (7th Cir. 1997) ....19

*Foman v. Davis*,
371 U.S. 178 (1962)....24

*Gamble v. Kaiser Found. Health Plan, Inc.*,
348 F. Supp. 3d 1003 (N.D. Cal. 2018)....23

*George v. Urban Settlement Servs.*,
833 F.3d 1242 (10th Cir. 2016) ....19

*Glob. Master Int'l Grp., Inc. v. Esmond Nat.*, Inc.,
76 F.4th 1266 (9th Cir. 2023) ....8

*Gov't APP Sols., Inc. v. City of New Haven*,
No. 23-15708, 2024 U.S. App. LEXIS 7224 (9th Cir. Mar. 27, 2024) ....5, 6

*Grimmett v. Brown*,
75 F.3d 506 (9th Cir. 1996) ....8

*H.J. Inc. v. N.w. Bell Tel. Co.*,
492 U.S. 229 (1989)....20

*Hasbrouck v. Sheet Metal Workers*,
586 F.2d 691 (9th Cir. 1978) ....22

*Hemi Grp., LLC v. City of N.Y.*,
559 U.S. 1 (2010)....5, 6

*Hollingsworth v. Perry*,
570 U.S. 693 (2013)....17

*Holmes v Securities Investor Protection Corp.*,
503 U.S. 258 (1992)....5



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

## TABLE OF AUTHORITIES (cont'd)

**Page**

*Hotel Emps. & Rest. Emps. Union Local 57 v. Sage Hospitality Res. LLC*,
390 F.3d 206 (3d Cir. 2004)....................10, 24

*Hotel Emps., Rest. Emps. Union Local 2 v. Marriot Corp.*,
961 F.2d 1464 (9th Cir. 1992)....................10, 24

*Kelly v. United States*,
590 U.S. 391 (2020)....................15

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375 (1994)....................4

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
940 F.2d 397 (9th Cir. 2001)....................7

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008)....................24

*Levitt v. Yelp! Inc.*,
No. 11-17676, slip op. (9th Cir. Sept. 2, 2014)....................8, 9, 10

*Linens of Eur., Inc. v. Best Mfg.*,
2004 U.S. Dist. LEXIS 18575 (S.D.N.Y. Sep. 15, 2004)....................20

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
431 F.3d 353 (9th Cir. 2005)....................8

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000)....................24

*Magic Laundry Services, Inc.*,
2013 U.S. Dist. LEXIS 53296 at *22....................14

*McLaughlin v. Anderson*,
962 F.2d 187 (2d Cir. 1992)....................20

*Metro. Opera Ass'n v. Local 100, HERE*,
239 F.3d 172 (2d Cir. 2001)....................11

*Moss v. U.S. Secret Service*,
572 F.3d 962 (9th Cir. 2009)....................7

*Mulhall v. UNITE HERE Local 355*,
667 F.3d 1211 (11th Cir. 2012)....................10, 24

*New Negro Alliance v. Sanitary Grocery Co.*,
303 U.S. 552 (1938)....................21

*NLRB v. Am. Nat'l Ins. Co.*,
343 U.S. 395 (1952)....................10, 24



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

**TABLE OF AUTHORITIES (cont'd)**

**Page**

*Noll v. Carlson*,
809 F.2d 1446 (9th Cir. 1987) ....................24

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
711 F.3d 1136 (9th Cir. 2013) ....................22

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ....................18

*Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ....................7

*Percoco v. United States*,
598 U.S. 319 (2023)....................17

*Perrin v. United States*,
444 U.S. 37 (1979)....................18

*Religious Tech. Ctr. v. Wollersheim*,
796 F.2d 1076 (9th Cir. 1986) ....................21

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
30 F.3d 339 (2d Cir. 1994)....................19

*San Diego Bldg. Trades Council v. Garmon*,
359 U.S. 236 (1959)....................23

*Scheidler v. Nat'l Org. for Women, Inc.*,
537 U.S. 393 (2003)....................8, 12, 13

*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*,
436 U.S. 180 (1978)....................23

*Sedima S.P.R.L. v. Imrex Co., Inc.*,
473 U.S. 479 (1985)....................8

*Sekhar v. United States*,
570 U.S. 729 (2013)....................8, 12, 13

*Smithfield v. United Food and Commercial Workers Int'l Union*,
585 F.Supp.2d 789 (E.D. Va. 2008) ....................10

*Sosa v. DIRECTV*,
437 F. 3d 923 (9th Cir. 2006) ....................22

*Steam Press Holdings, Inc. v. Haw. Teamsters & Allied Workers Union, Local 996*,
302 F.3d 998 (9th Cir. 2002) ....................21

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ....................7



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

**TABLE OF AUTHORITIES (cont'd)**

**Page**

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*, 826 F.Supp.2d 1201 (C.D. Cal. 2011) ....7, 19, 20

*In re Wilshire Courtyard*, 729 F.3d 1279 (9th Cir. 2013) ....4

*U.S. Parole Commn. v. Geraghty*, 445 U.S. 388 (1980)....4

*United Brotherhood of Carpenters v. Building and Construction Trades Department*, 770 F.3d 834 (9th Cir. 2014) ....9

*United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015) ....18

*United States v. Cagnina*, 697 F.2d 915 (9th Cir. 1983) ....18

*United States v. Enmons*, 410 U.S. 396 (1973)....8

*United States v. Manzo*, 851 F. Supp. 2d 797 (D.N.J. 2012) ....17

*United States v. Sturm*, 870 F.2d 769 (1st Cir. 1989)....9

*United States v. Tavelman*, 650 F.2d 1133 (9th Cir. 1981) ....16

*United States v. Turkette*, 452 U.S. 576 (1981)....18

*Wackenhut Corp. v. Service Employees International Union*, 593 F. Supp. 2d 1289 (S.D. Fla. 2009) ....15

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ....6

*Wilkie v. Robbins*, 551 U.S. 537 (2007)....9

**Constitutions**

U.S. Const. Article III § 2....4

**Federal Statutes**

18 U.S.C. § 1951(b)(2) ....9



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

**TABLE OF AUTHORITIES (cont'd)**

**Page**

18 U.S.C. § 1952 (Travel Act) ........ 8, 16

18 U.S.C. § 1952(b) ........ 16

18 U.S.C. §§ 1961(1) ........ 20

18 U.S.C. §§ 1961(5) ........ 20

18 U.S.C. §§ 1961-1968 (RICO) ........ 2

18 U.S.C. § 1962(c) ........ 16, 18, 20

18 U.S.C. § 1964(c) ........ 5

29 U.S.C. § 110 ........ 21

29 U.S.C. § 113 ........ 21

29 U.S.C. § 152(9) ........ 22

Hobbs Act, 18 U.S.C. § 1951 ........ 8

Norris-LaGuardia Act § 1, 29 U.S.C. § 101 ........ 21

Norris-LaGuardia Act § 4, 29 U.S.C. § 104 ........ 21

**State Statutes**

Cal. Elec. Code § 9604(a)(1) ........ 23

Cal. Elec. Code § 18620 ........ 16, 17

Cal. Elec. Code § 18621 ........ 16, 17

**Rules**

Fed. R. Civ. P. (8)(a) ........ 6

Fed. R. Civ. P. 9(b) ........ 7, 8

Fed. R. Civ. P. 12(b)(1) ........ 1, 4, 25

Fed. R. Civ. P. 12(b)(6) ........ 1, 6, 25

Fed. R. Civ. P. 15 ........ 24

Fed. R. Civ. P. 15(a)(2) ........ 24



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

# I. INTRODUCTION

Plaintiff California Primary Care Association ("CPCA") should be focused on meeting the needs of its vulnerable patient population in the face of impending "massive federal cuts" to community healthcare funding.[1] Instead, CPCA and its affiliated community health clinics ("CHCs") (collectively, "Plaintiffs"),[2] upset that Defendant SEIU United Healthcare Workers-West ("UHW") and its democratically elected President, Defendant Dave Regan (collectively, "Defendants"), supported California Proposition 44 while seeking to organize CHC workers, have once again turned to the courts.[3] Make no mistake—Plaintiffs' ultimate aim is preventing UHW from engaging in the political process and preventing clinic workers from unionizing.

Essentially, Plaintiffs allege that UHW and Regan used California's ballot initiative process as a means of economic leverage during a union organizing campaign. Even assuming this was true, such conduct is perfectly lawful. However, instead of respecting their employees' wishes and allowing them to choose (or not choose) unionization in a neutral environment free from anti-union coercion, Plaintiffs filed the instant lawsuit. The lawsuit is without legal or factual basis, and consists mostly of inflammatory, prejudicial, irrelevant, and personal attacks against UHW and Regan. The lawsuit must be dismissed for several reasons.

*First*, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), because Plaintiffs do not plead a qualifying "injury-in-fact" and therefore lack standing to bring this lawsuit.

*Second*, dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate because Plaintiffs do not (and cannot) state a claim for relief under the Racketeer Influenced and Corrupt

---

[1] https://www.chcf.org/blog/2025/10/03/how-massive-federal-cuts-will-create-unprecedented-challenges-medi-cal-patients-providers/.

[2] CPCA's member institutions include Shasta Community Health Center, Hill Country Community Clinic, Mountain Valleys Health Centers, Centro de Salud de la Comunidad de San Ysidro, Inc., and McCloud Healthcare Clinic, Inc.

[3] This is not the first time CPCA has turned to the courts in an effort to entangle UHW in litigation. On April 30, 2026, CPCA filed a last-ditch lawsuit seeking to enjoin the California Secretary of State from placing Proposition 44 on the ballot. CPCA named UHW as defendant in the lawsuit. On August 7, 2026, the district court granted defendants' motions to dismiss and denied CPCA's motion for a preliminary injunction. *CPCA, et al. v. Shirley N Weber, PhD, et al.*, 2026 U.S. Dist. LEXIS, at *17 (N.D. Cal 2026).

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

Organizations ("RICO") Act (18 U.S.C. §§ 1961-1968):

- Plaintiffs do not plead any of the predicate acts which would support a RICO extortion claim, under either the Hobbs Act, Travel Act, or generic state law extortion statutes;
- Plaintiffs do not plead any predicate acts which would support a RICO bribery claim;
- Plaintiffs generally fail to plead that Defendants were part of an "association-in-fact enterprise," which is required to state a RICO claim;
- Plaintiffs generally fail to plead sufficient facts which would show a "pattern" of criminal behavior, another requirement of a successful RICO claim;
- Plaintiffs' claim for injunctive relief is foreclosed as a matter of law;
- Defendants' conduct, even as alleged, constitutes First Amendment-style petitioning, which is wholly protected under the *Noerr-Pennington* doctrine; and
- Defendants' alleged conduct is protected by the National Labor Relations Act.

## II. STATEMENT OF FACTS

Plaintiff CPCA represents more than 2,300 non-profit Community Health Centers ("CHCs"), including the CHC Plaintiffs, and regional clinic associations across California, which collectively serve 6.7 million patients each year. Compl. ¶ 3. CHCs provide health care to low-income, uninsured, and underserved populations. *Id*. Defendant UHW is a California-based labor union representing healthcare workers, with over 120,000 members across the state. Compl. ¶¶ 1, 4, 23. Defendant Dave Regan is the democratically elected President of UHW. Compl. ¶¶ 4, 24.

UHW and Regan wanted Plaintiffs to sign a labor neutrality agreement which would govern UHW's planned campaign to organize approximately 25,000 CHC employees. Compl. ¶¶ 8, 33. The proposed agreement was meant to protect CHC employees' right to choose (or not choose) unionization, free from anti-union employer coercion and the National Labor Relations Board's convoluted, delay ridden election process. Under the proposed agreement, union organizers would be permitted limited access to CHC facilities for purposes of communicating with employees about unionization; Plaintiffs would provide UHW organizers with employee names and contact information; Plaintiffs would remain neutral on the question of unionization; and Plaintiffs would recognize UHW as the CHC employees' lawful bargaining representative



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

upon a showing of majority employee support through authorization cards (a "card-check" procedure). Compl. ¶¶ 31-33. The neutrality agreement would not force Plaintiffs to recognize or bargain with UHW unless a majority of eligible employees desired unionization, nor would the agreement mandate Plaintiffs to sign a collective bargaining agreement with UHW. *Id.*

According to Plaintiffs, UHW and Regan attempted to pressure CHCs into signing the labor neutrality agreement by indicating that if they signed, UHW would effectuate the withdrawal of a ballot initiative known as the "Clinic Funding Accountability and Transparency Act" (hereinafter, "Proposition 44"). Compl. ¶ 122. Proposition 44 required CHCs to spend 90% of their total revenue on patient care, as opposed to exorbitant executive salaries, expensive artwork, and other non-essentials. Compl. ¶¶ 121, 123.[4] CHCs vehemently opposed Proposition 44, claiming that it would cause significant financial hardship. Compl. ¶¶ 121, 123. Plaintiffs assert that, over the past approximately 15 years, UHW and Regan have attempted to pressure various for-profit hospitals (Compl. ¶¶ 54-94) and dialysis centers (Compl. ¶¶ 95-113) into signing labor neutrality agreements through the use of California's initiative process.

Plaintiffs next allege that in approximately November 2025, Defendant UHW, "Union Affiliate A," and "Union Affiliate B" jointly provided the CHCs with a written "Election Procedure Agreement" ("EPA"). *Id.*; Compl. ¶ 136, Exh. 1. The EPA contained the generic labor neutrality provisions described above, with one major difference—CHC employees *would* vote in a secret ballot election, conducted by a private election supervisor under NLRB rules, or by the NLRB itself, if UHW elected that option. Compl. ¶ 136, Exh. 1, at pp. 62-63. According to Plaintiffs, Defendants reiterated—both in writing and through Regan at an April 2026 meeting—that Proposition 44 would be withdrawn if the CHCs signed the EPA. Compl. ¶¶ 132, 141.

Plaintiffs allege that through the above-described conduct, UHW and Regan engaged in a "pattern of racketeering activity" within the meaning of the federal RICO statute. Compl. ¶¶ 176-196. Plaintiffs also bring a second related cause of action for conspiracy to violate RICO. Compl. ¶¶ 197-201. The Complaint requests monetary damages and injunctive relief. Compl., p. 55.

[4] Neither UHW nor Regan were the proponents of Proposition 44; it was introduced by two UHW employees in their individual capacities. Compl. ¶ 123.



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

## III. ARGUMENT

### A. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

#### 1. Legal standard for motion to dismiss under Rule 12(b)(1)

Federal courts only have jurisdiction over actual "cases and controversies." U.S. Const. Art. III §2; see also Fed. R. Civ. P. 12(b)(1) (requiring dismissal of a case if the reviewing court lacks subject matter jurisdiction). To avoid dismissal under Rule 12(b)(1), a plaintiff must satisfy three requirements: (1) they have standing to sue; (2) they sustained a ripened injury; and (3) the subject matter of the claim is not moot.[5] *Allen v. Wright*, 468 U.S. 737, 752 (1984); *Abbott Laboratories v. Garnder*, 387 U.S. 136, 148 (1967); *U.S. Parole Commn. v. Geraghty*, 445 U.S. 388 (1980). If the plaintiff cannot satisfy any one of these three factors, the matter should be dismissed for lack of subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Lack of jurisdiction is presumed until the plaintiff proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-378 (1994); *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013).

#### 2. Plaintiffs lack standing to bring a claim under the RICO statute because they cannot demonstrate direct and proximate injury

To establish standing, a plaintiff must demonstrate that they have suffered an injury-in-fact, that the injury is traceable to the complained-of conduct, and that the injury is redressable by the reviewing court. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d at 1122. An injury in fact is an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* The injury must have been already suffered, or a threatened injury that is "certainly impending." *Clapper v. Amnesty International*, 568 U.S. 398, 408 (2013). Allegations of possible future injury are insufficient. *Id.* Traceability mandates that a plaintiff establish a causal connection by proving that the injury is fairly traceable to the challenged conduct of the defendant. *Id.* Finally, redressability requires a plaintiff to prove

[5] Any supposed harms related to Proposition 44 are now moot. The measure appeared on the November 2026 ballot and failed. https://calmatters.org/politics/2026/11/california-election-2026-prop-44/



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

that the injury suffered will likely be redressed by a favorable decision. *Id*.

A RICO plaintiff has standing to sue only if the defendant's racketeering activity directly and proximately causes injury to their business or property. 18 U.S.C. § 1964(c). "Plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086-87 (9th Cir. 2002). Recovery requires a showing of "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992); *see also Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1035 (N.D. Cal. 2004) (dismissing RICO claim for failure to plead specific facts showing a concrete financial injury); *City & Cty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 661 (N.D. Cal. 2020) (city's RICO claim dismissed without leave to amend because failure to allege a proximately caused injury is "fatal"); *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 12 (2010) (emphasizing "direct relationship" prong).

Plaintiffs assert various types of damages which should correctly be categorized as "intangible property interests" as opposed to concrete financial injuries: for example, a loss of "business autonomy, managerial authority, and operational control." Compl. ¶ 167. It is well-established that such damages are insufficient under RICO. *Chaset*, 300 F.3d at 1087.

Moreover, costs that a plaintiff independently **chooses** to incur are not directly or proximately caused by a defendant's alleged racketeering activity. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006) (a plaintiff's own lawful actions can serve as independent factors rendering a purported injury too indirect from the predicate RICO acts); *see also Gov't APP Sols., Inc. v. City of New Haven*, No. 23-15708, 2024 U.S. App. LEXIS 7224, at *5 (9th Cir. Mar. 27, 2024) (where "independent acts each play a role in the loss of value, it [is] 'difficult . . . to ascertain the amount of a plaintiff's damages attributable to' Defendants' predicate acts") (internal citations omitted); *Hemi Grp.*, 559 U.S. at 15 (direct relationship requirement cannot be met where "[m]ultiple steps … separate the alleged fraud from the asserted injury").

Here, most, if not all, of the injuries cited by Plaintiffs fall into this "independent action" category, including millions of dollars CPCA and the CHCs supposedly spent on the following: negotiations with Defendants; experts, attorneys, and political polling firms; analyses of the EPA



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

and its potential impacts; public relations and marketing; enhanced security and increased staff hours; and employee education; and social media outreach. Compl. ¶¶ 168-171. Defendants did not "force" Plaintiffs to incur **any** of these costs. If Plaintiffs **chose** to make these expenditures because they felt pressured by Proposition 44 and/or UHW's organizing campaign, that is—at worst—the result of lawful economic coercion, not any supposed racketeering activity.

Similarly, Plaintiffs' allegation that one of the CHCs delayed proposed construction because of a lender's concerns about the impact of the Proposition 44 (Compl. ¶ 173) patently fails RICO's directness requirement. Any injury would rest on separate actions caused by separate parties (i.e., the facility's lenders). *See City of New Haven*, 2024 U.S. App. LEXIS 7224, at *5 ("a 'theory of liability [that] rests not just on separate actions, but separate actions carried out by separate parties' is insufficiently direct") (citing *Hemi Grp.*, 559 U.S. at 11)).

## B. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### 1. <u>Legal standard for motion to dismiss under Rule 12(b)(6)</u>

To survive a 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required "to provide the 'grounds' of his entitle[ment] to relief'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. (8)(a)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and factual allegations must add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Though "well-pleaded allegations of fact in the complaint" are accepted as true, *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003), the reviewing court need not accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged," *Clegg v. Cult Awareness Network*, 18 F.3d 752,



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

754-55 (9th Cir. 1994). Allegations made upon information and belief are permitted only when the facts are exclusively within the defendant's possession or the belief rests on factual information that makes the inference plausible. *Park v. Thompson*, 851 F.3d 910, 928-29 (9th Cir. 2017). Labeling a conclusion as a belief does not, on its own, make it plausible. *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926-27 (9th Cir. 2013). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* at 1080 (quoting *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)).

**2. <u>Plaintiffs' claims are subject to the heightened fraud pleading standard of Federal Rule of Civil Procedure 9(b)</u>**

In a RICO case, where the alleged underlying predicate acts sound in fraud, a plaintiff must plausibly allege each predicate act with the particularity required by Rule 9(b). *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (it is a "fatal defect" under Fed. R. Civ. P. 9(b) if circumstances of fraud are not stated with particularity). "Rule 9(b)'s requirement that 'in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims." *Alan Neuman*, 862 F.2d at 1392; *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058,1065-1066 (9th Cir. 2004) (affirming dismissal of civil RICO claim for failure to specifically allege details establishing purported fraud*); In re Toyota Motor Corp. Unintended Acceleration Mktg.*, 826 F. Supp. 2d at 1201 (Rule 9(b)'s heightened requirement applies to civil RICO claims alleging mail fraud and wire fraud). In the RICO context, Rule 9(b) requires that the Plaintiffs "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 2001). Plaintiffs may not "simply lump together multiple defendants without specifying the role of each defendant in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

As a general matter, Plaintiffs' allegations are conclusory, vague, and—most troublingly—frequently based on slanted, unsourced opinion columns; misinterpreted news articles; "information and belief"; and even "anonymous" sources invented out of whole cloth.



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

*See, e.g.*, Compl. ¶¶ 50 (asserting "on information and belief" that Defendant Regan "increased the maximum dues of UHW's members to pay for his salary); 147 (allegations come from an "anonymous" source supposedly present during EPA negotiations between UHW and CPCA); 153 (unsourced, demonstrably biased San Diego Union-Tribune opinion column); 154 (Orange County Register opinion column calling Defendants "thuggish"). Plaintiffs do not have any personal knowledge of the claims therein; such allegations would not hold up to the general Rule 12 pleading standard, let alone the heightened Rule 9(b) pleading standard applicable here.

**3. <u>Plaintiffs do not allege any predicate acts which would support a RICO extortion claim</u>**

To state a cause of action under RICO, a plaintiff must show the defendant engaged in: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *See, e.g.*, *Glob. Master Int'l Grp., Inc. v. Esmond Nat.*, Inc., 76 F.4th 1266, 1271 (9th Cir. 2023) (citations omitted); *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005); *Grimmett v. Brown*, 75 F.3d 506 (9th Cir. 1996); *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

"Racketeering activity" includes generic extortion prohibited by state statutes, which the U.S. Supreme Court has classified as the "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003). The extortioner must pursue or receive something of value that he can exercise, transfer, or sell himself. *Sekhar v. United States*, 570 U.S. 729 (2013) (citing *Scheidler*, 537 U.S. at 405). Additionally, the pursuit must be "wrongful," in that the extortioner has no legitimate claim to the property he attempts to obtain. *Levitt v. Yelp! Inc.*, No. 11-17676, slip op. at 13 (9th Cir. Sept. 2, 2014); *United States v. Enmons*, 410 U.S. 396 (1973).

Plaintiffs allege that UHW and Regan engaged in extortion, citing the Hobbs Act (18 U.S.C. §1951); Travel Act (*id.* §1952); and RICO's catch-all generic extortion provision (*id.* §1961(1)). Of these statutes, only the Hobbs Act actually defines the term "extortion," as "the obtaining of property from another, with his consent, induced by wrongful use of actual or



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).[6] However, while the Travel Act and RICO do not expressly define "extortion," the U.S. Supreme Court interprets these statutes to incorporate the "generic" definition of extortion, which is comparable to the Hobbs Act definition. *Wilkie v. Robbins*, 551 U.S. 537, 567 (2007).[7]

**a. Exertion of economic pressure to obtain a "lawful and legitimate bilateral agreement" such as a union neutrality agreement is not extortion**

Where a party demands a lawful and legitimate bilateral agreement, as opposed to a one-sided payoff, the demanding party is not guilty of extortion. *United Brotherhood of Carpenters v. Building and Construction Trades Department*, 770 F.3d 834 (9th Cir. 2014) ("Carpenters");[8] *see also United States v. Sturm*, 870 F.2d 769, 773 (1st Cir. 1989) (holding that "there is nothing inherently wrongful about the use of economic fear to obtain property"); *Levitt*, Case No. 11-17676, slip op. at 13 ("[t]hreats of economic harm made to obtain property from another are not considered wrongful where the alleged extortioner has a legitimate claim to the property obtained through such threats") (internal quotations and citations omitted); *Brokerage Concepts v. United States Healthcare*, 140 F.3d 494, 524 (3d Cir. 1998) (federal courts will recognize a broad claim of right defense to extortion in cases involving solely the fear of economic harm).

Plaintiffs do not allege that UHW or Regan made violent threats or leveraged any non-economic pressure on CPCA or the CHCs.[9] Only Plaintiffs' fear of economic pressure is at issue.

---

[6] Plaintiffs do not plead facts indicating that UHW or Regan acted "under color of official right," meaning that they must prove "wrongful use of actual or threatened force, violence, or fear."

[7] California's extortion statute is analyzed under the same rubric as Hobbs Act extortion. *Levitt v. Yelp! Inc.*, No. 11-17676, slip op. at 18 (9th Cir. Sept. 2, 2014) ("[T]he elements of extortion under federal and California law are substantially the same.").

[8] Plaintiffs may argue that the instant case is distinguishable from *Carpenters* because here, UHW and Regan are (allegedly) liable for criminal extortion under California law, while the conduct alleged in *Carpenters* was merely tortious. However, the plaintiffs in *Carpenters* were specifically admonished for advancing a theory which "would transform innumerable **state crimes and torts** into federal crimes." 770 F.3d at 840 n.4 (emphasis added). As the *Carpenters* court observed, courts must "refrain from interpreting federal statutes to 'alter sensitive federal-state relationships' by 'converting an astonishing amount of traditionally local criminal conduct into a matter for federal enforcement.'" *Id.* (emphasis added) (alterations and internal quotation marks omitted).

[9] Instead, Plaintiffs toss out irrelevant, unsourced, anonymous allegations of Regan engaging in aggressive and/or inappropriate conduct in completely unrelated contexts. Compl. ¶ 143.

Moreover, Plaintiffs concede that UHW and Regan's primary objective was to pressure Plaintiffs into signing a union neutrality and organizing-rights agreement. Plaintiffs do not (and they cannot) allege that such an agreement is unlawful in whole or in part. To the contrary, Plaintiffs assert that such agreements "are not unlawful in concept." Compl. ¶ 32. The U.S. Supreme Court, along with every circuit court which has examined the issue, concurs. *See, e.g.*, *NLRB v. Am. Nat'l Ins. Co.*, 343 U.S. 395, 401-02 (1952) (an employer's recognition of a union and voluntary entry into a collective bargaining agreement is not only legal, but encouraged, under the National Labor Relations Act); *Hotel Emps., Rest. Emps. Union Local 2 v. Marriot Corp.*, 961 F.2d 1464, 1468, 1470 (9th Cir. 1992) (declaring consistent with federal labor policy an employer's agreement to accept the results of a card check in lieu of an NLRB election and to remain silent during a union's organizational campaign); *Mulhall v. UNITE HERE Local 355*, 667 F.3d 1211, 1215 (11th Cir. 2012) ("[e]mployers and unions may set ground rules for an organizing campaign," such as a neutrality agreement); *Adcock v. Freightliner LLC*, 550 F.3d 369, 376 (4th Cir. 2008) (finding a card-check agreement to be a legitimate set of "ground rules to keep an organizing campaign peaceful"); *see also Hotel Emps. & Rest. Emps. Union Local 57 v. Sage Hospitality Res. LLC*, 390 F.3d 206, 219 (3d Cir. 2004) ("Not surprisingly, [the employer] is unable to provide any legal support for the remarkable assertion that entering into a valid [card-check neutrality] agreement … amounts to illegal labor bribery.")[10]

Put simply, where a defendant is pursuing a lawful agreement or transaction, exerting economic pressure to secure the agreement is not extortion. *Levitt*, No. 11-17676, slip op. at 16. The only exception to this general principle is where a plaintiff has the preexisting right to be free from the specific threat at issue. *Id*. Here, Plaintiffs do not (and cannot) articulate any "preexisting right" to be free from a labor neutrality agreement, or from economic pressure exerted by a union seeking to organize CHC employees. *Levitt*, No. 11-17676, slip op. at 18

---

[10] Contrast situations where courts have identified "labor extortion," i.e., when a union official insists on sham elections or personal payments. See *Smithfield v. United Food and Commercial Workers Int'l Union*, 585 F.Supp.2d 789, 796, 803 (E.D. Va. 2008); *Cook-Illinois Corp. v. Teamsters Local No. 777*, No. 11-cv-8884, 2012 WL 1655976, at *7 (N.D. Ill. May 10, 2012). CPCA does not allege anything of the sort.



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

(citing *Brokerage Concepts*, 140 F.3d at 523 [because businesses do not have a preexisting right to be free from threats of economic loss, "use of economic fear in business negotiations between private parties is not 'inherently' wrongful," and "fear of economic loss is a driving force of our economy that plays an important role in legitimate business transactions"]). This same principle holds in the context of economic pressure campaigns brought by labor unions. *See, e.g.*, *Cintas Corp. v. Unite Here*, 601 F.Supp.2d 571, 578 (S.D.N.Y. 2009) (finding that employers "do[] not have a right to operate free from any criticism, organized or otherwise," in the context of a union making threats of economic harm during a union organizing campaign); *Metro. Opera Ass'n v. Local 100, HERE*, 239 F.3d 172, 177-78 (2d Cir. 2001) ("[I]n seeking to exert social pressure on [plaintiff], the Union's methods may be harassing, upsetting, or coercive, but unless we are to depart from settled First Amendment principles, they are constitutionally protected.").

Taking each of these points together—(a) UHW and Regan sought a lawful labor neutrality agreement; (b) Plaintiffs identify no preexisting right to be free Defendants' efforts to obtain such an agreement; and (c) Defendants engaged only in economic pressure tactics, as opposed to threats of violence—the conduct described in the Complaint is not "wrongful" within the meaning of the Hobbs Act and thus cannot constitute criminal extortion.

**b. Plaintiffs fail to attribute a "property-obtaining" objective to Defendants**

For four separate reasons, Plaintiffs failed to plead facts that would satisfy RICO's "property-obtaining objective" element.

*First*, a substantial portion of the "property" identified in the Complaint that UHW and Regan are allegedly seeking does not belong to CPCA or the CHCs. It is not CPCA's money, nor the money of the CHCs, which UHW and Regan are supposedly seeking to obtain in the form of union dues. Unionized **employees** pay union dues—not their employers. *See Am. Fed'n of Gov't Emps. Council 214 v. Fed. Labor Relations Auth.*, 835 F.2d 1458, 1460 (D.C. Cir. 1987) (noting that even when an employer withholds dues from an employee paycheck and pays them directly to the union, the dues belong to the employee until the union receives the funds); *Am. Fed'n of Gov't Emps. Local 1816 v. Fed. Labor Relations Auth.*, 715 F.2d 224 (5th Cir. 1983) (same).



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

*Second*, much of the "property" identified in the Complaint is intangible and thus does not come within the ambit of the crime of extortion. A defendant only commits extortion if they attempt to obtain property that is transferable, i.e., capable of being passed from person to person. *Scheidler*, 537 U.S. at 393; *see also Sekhar*, 570 U.S. at 729 (reversing the attempted extortion conviction of a defendant who threatened to expose a government official's extramarital affair if the official did not recommend investing government money in defendant's fund).

In *Sekhar*, the court held that although various personal rights, such as the government official's intangible property right to give his disinterested legal opinion free from outside interference might qualify as property, such rights are not **obtainable** property. *See id.* at 737. (emphasis added). The *Sekhar* court described the government's extortion theory as "sophistic," and further chastised the government for descriptions of personal rights to make it seem as if those rights were obtainable:

> No fluent speaker of English would say that petitioner obtained and exercised the general counsel's right to make a recommendation, any more than he would say that a person obtained and exercised another's right to free speech. He would say that petitioner forced the general counsel to make a particular recommendation, just as he would say that a person forced another to make a statement. Adopting the [respondent's] theory here would not only make nonsense of words; it would collapse the longstanding distinction between extortion and coercion and ignore Congress's choice to penalize one but not the other. That we cannot do.

*Id.* at 737-38 (quotations and internal citations omitted).

Here, the benefits, or "property," conferred to UHW in the proposed EPA are personal rights which cannot be commercially exploited. In this way, Plaintiffs are guilty of the same exact sophistry identified in *Sekhar*. Plaintiffs allege that UHW and Regan are trying to obtain various forms of "property," including: a list of employees to be used for the purpose of communicating to those employees about unionization rights, and by extension a waiver of the CHCs' rights **not** to provide such a list; access for union organizers to employer property at certain limited times, and an accompanying waiver of the CHCs' rights to exclude union organizers from their properties; promised neutrality during a potential UHW organizing campaign, and thus a waiver of CPCA's right to conduct an anti-union campaign of its own; and an agreement by CPCA



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

members to recognize UHW as a bargaining agent of CHC employees through a private election procedure. Compl., pp. 65-66. Assuming the truth of these allegations, Plaintiffs may, at best, be able to demonstrate that UHW and Regan's conduct constitutes economic coercion.[11] But, per *Sekhar*, this is not the same as extortion, because there is no obtainable property at stake—only CPCA and the CHCs' personal, intangible rights to conduct an anti-union campaign. *See* Compl. ¶ 167 (Plaintiffs conclude, without any factual support, that their "business autonomy, managerial authority, and operational control are valuable property interests that Defendants seek to obtain and exercise for their own benefit …"). Contrary to Plaintiffs' conclusory allegations, these types of rights cannot "be used, exercised, transferred, or bargained away." *Id.*

Plaintiffs may assert that because UHW hoped the EPA would eventually lead to the receipt of additional dues revenue, this constitutes obtainable property. Compl. ¶ 158. As noted above, this "property" would come out of employee paychecks—it does not belong to Plaintiffs. Moreover, *Sekhar* forecloses this theory. There, even though the defendant may have hoped to profit financially from the government's potential future investment in his fund, this alone was insufficient to save the government's extortion prosecution. *Sekhar*, 570 U.S. at 740 ("the term 'property' plainly does not reach everything that a person may hold dear; nor does it extend to everything that might in some indirect way portend the possibility of future economic gain") (Alito, J., concurring).

*Third*, even if the property at issue was transferable, UHW and Regan are not using it for their own benefit. Under the Hobbs Act (and comparable state extortion statutes), a defendant must deprive the plaintiff of his property **and** have the ability to, and wish to, actually obtain the property at issue. *Scheidler*, 537 U.S. at 404-05. Here, Plaintiffs repeatedly allege that UHW and Regan are depriving CHCs of tangible and intangible property. Plaintiffs fail to plead, however, how UHW and Regan could have actually acquired such property, or why they would want to. *See Behringer v. Cal. Polytechnic State Univ.*, No. 5:23-cv-00934-JFW (SK), 2023 U.S. Dist. LEXIS 186513, at *14 (C.D. Cal. Sep. 15, 2023) (defendant's implementation of various COVID-

[11] The Complaint betrays this conclusion, repeatedly referring to UHW and Regan's "campaign of … coercion." *See, e.g.*, Compl. ¶ 4.

19 restrictions could not constitute a pattern of racketeering activity under RICO because "no one ever 'obtained' anything of value from plaintiff to consummate the alleged crime") (citing *Block v. Snohomish Cnty.*, 733 F. App'x 884, 888-89 (9th Cir. 2018)).

For example, Plaintiffs allege that UHW and Regan sought to compel CHCs to give up their employees' statutory right to secret-ballot NLRB elections; sought to deprive CHCs of their free-speech rights concerning unionization; and sought to force CHCs to sacrifice their property rights by allowing union access during working hours. Compl., p. 65. Yet Plaintiffs do not (and again cannot) explain how UHW and Regan acted to obtain **for themselves** the right to a secret-ballot election, the CHCs' free-speech rights, or various other intangible rights possessed by CHCs and their employees. In *Magic Laundry Servs. v. Workers United SEIU*, No. CV-12-9654-MWF (AJWx), 2013 U.S. Dist. LEXIS 53296, at *21-22 (C.D. Cal. Apr. 8, 2013), which involved similar facts, the court determined that a union seeking an organizing agreement was not liable for extortion:

> Here, Magic Laundry at most alleges that it faced a choice [whether or not to unionize its workforce] and that Defendants exerted coercive pressure to force its hand … If the Court were to recognize an attempt to influence this choice as sufficient for the purposes of criminal extortion, the distinction emphasized in *Scheidler* would be lost and Defendants could be held liable for extortion **in spite of never having sought to acquire something**.

*Id.* (internal citations omitted) (emphasis added).

Indeed, much of what Plaintiffs allege that UHW and Regan are extorting is property that Defendants (a) cannot physically obtain and (b) do not want even if they could obtain it. UHW and Regan cannot exercise for themselves an employee's right to a secret-ballot NLRB election, the right of CHCs to conduct an anti-union campaign, or the statutory rights of CPCA, its member clinics, or their employees.[12] It goes without saying, but UHW wants employer neutrality and a streamlined election process; it **does not want** to participate in a full NLRB secret-ballot

---

[12] Nor are Defendants capable of obtaining and exercising for themselves Plaintiffs' agreement to recognize UHW as a bargaining agent, or the CHCs' agreement to enter into collective bargaining agreements. *Magic Laundry Services, Inc.*, 2013 U.S. Dist. LEXIS 53296 at *22 ("Defendants did not seek to exercise Magic Laundry's right as an employer to unionize or not to unionize. Defendants did not seek to infiltrate Magic Laundry and make the decision for it.").



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

election—an interminably long process which is easily subject to employer interference.

Moreover, UHW and Regan have no need or desire to acquire CHCs' business reputation and goodwill, the operation of its CHCs, CHC patients, or any related revenue streams. *See Wackenhut Corp. v. Service Employees International Union*, 593 F. Supp. 2d 1289, 1296 (S.D. Fla. 2009) (finding that because the union did not try to acquire for itself the employer's business reputation or customers, the employer had not stated a violation of the Hobbs Act).

*Fourth* and last, incidental property transfers, collateral to the primary transaction, should not be considered. Plaintiffs identify incidental aspects of the proposed EPA, such as the provision that employer and union share the fees of the neutral vote counter, as involving the transfer of "money." At most, this is an imaginative attempt to plead around *Scheidler* and *Sekhar*. This attempt fails because any potential monetary exchange is plainly incidental to the broader EPA and does not fundamentally transform UHW's objective into one that is "property"-obtaining.[13] Indeed, the U.S. Supreme Court—in the context of construing the meaning of the term "property" in federal fraud statutes which also contain the property-obtaining element—has held that courts should consider the **essence** of the transaction, and not its incidental features, to determine if the element is satisfied. *See Kelly v. United States*, 590 U.S. 391 (2020) (in the context of the New Jersey "Bridgegate" scandal, while defendants engaged in deception, abuse of power, and corruption, their objective was regulatory and political—reallocating bridge lanes—rather than the taking of property or economic resources, such that the incidental costs allegedly imposed on the taxpayers were insufficient to meet the "property" element of the crime).

For the same reason, Plaintiffs' vague references to a collateral proposal involving money are also insufficient to rescue its RICO claim. Specifically, Plaintiffs allege that, in June 2026, UHW proposed a "completely separate arrangement" whereby it would withdraw Proposition 44 in exchange for CPCA spending money on UHW's separate wealth tax initiative. Compl. ¶ 187. While money is transferable and obtainable property, Plaintiffs did not allege the requisite

[13] The collateral, relatively unimportant nature of the election cost-sharing aspect of the proposed EPA is self-evident. Had CPCA pushed back on this provision, UHW and Regan would have certainly found another way to ensure an unbiased, neutral vote counter without requiring monetary payments.



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

"pattern" of monetary demands related to the wealth tax, or a pattern of any comparable monetary demands. Nor did Plaintiffs allege that any entity other than UHW was involved in the supposed wealth-tax demand. As explained below (see § III(B)(6)-(7), *infra*), isolated acts and single-party acts fail RICO's "pattern" and enterprise requirements. 18 U.S.C. § 1962(c).

**c. CPCA does not allege sufficient facts to state a claim for violation of the Travel Act**

Along with the Hobbs Act, Plaintiffs contend that UHW and Regan violated 18 U.S.C. § 1952, the Travel Act. The elements of a Travel Act offense are "(1) interstate commerce or use of an interstate facility (2) with intent to promote an unlawful activity and (3) a subsequent overt act in furtherance of that unlawful activity." *United States v. Tavelman*, 650 F.2d 1133, 1138 (9th Cir. 1981). The Travel Act furthermore defines "unlawful activity" as extortion in violation of state law. 18 U.S.C. § 1952(b). In other words, to state a claim under the Travel Act, a plaintiff must show that the defendant intended to promote extortion in violation of state law.

As demonstrated above, Plaintiffs have not alleged that UHW or Regan promoted extortion in violation of any state laws: Defendants neither attempted to obtain for themselves the allegedly extorted property nor acted "wrongfully," both necessary elements to prove generic extortion under California law. Because Defendants have not attempted any extortive acts, the Travel Act claim must by definition fail. In sum, because Plaintiff did not plead facts supporting successful extortion claim—either generic extortion, violation of the Hobbs Act, or violation of the Travel Act—there is no "racketeering activity" on which it can base its RICO cause of action. *See Cintas Corp.*, 601 F.Supp.2d at 578 (S.D.N.Y. 2009) (dismissing employer's RICO claims brought against a union defendant because the defendant's conduct did not establish Travel Act violations or violations of generic state extortion statutes).

**4. <u>Plaintiffs do not allege any predicate acts sufficient to support a RICO bribery claim</u>**

Plaintiffs allude to the crime of bribery as a secondary basis for their RICO claim, specifically citing two anti-corruption provisions of the California Elections Code. Compl. ¶¶ 12-15; Elec. Code sec. 18620, 18621. Section 18620 applies only to those who **for the purpose of** "fraudulently inducing, persuading, or seeking the proponent or proponents of any initiative or



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

referendum measure or recall petition to … abandon" a ballot measure, engage in various forms of prohibited conduct, i.e., efforts to solicit money or other things of value aimed at influencing the "proponent or proponents" of a ballot measure. (Emphasis added.) Section 18621 is even more limited in its scope, applying only to "**[a]ny proponent** of an initiative or referendum measure or recall petition who seeks, solicits, bargains for, or obtains any money or thing of value of or from any person … for the purpose of abandoning the same." (Emphasis added.)

The term "proponent" is well-defined; it includes only those who actually present a proposed initiative to the California Attorney General—not every person or organization which voices support for the initiative or even every person or organization which spends money to advance the initiative. Plaintiff concedes that neither UHW nor Regan is listed as a proponent of Proposition 44. Compl. ¶ 123. Thus, neither Defendant could have violated Section 18621.

With respect to section 18620, Plaintiffs' claim fails for the same reason as described below in Section III(B)(8), *infra*. Beyond conclusory allegations, Plaintiffs do not state specific facts demonstrating that Defendants' advocacy for Proposition 44, or the economic pressure tactics used to finalize an EPA with CPCA, was "fraudulent." Indeed, even Plaintiffs own allegations suggest that UHW genuinely supported Proposition 44 and spent significant resources on its success, monetary and otherwise. Absent contrary facts pled with particularity, which Plaintiffs cannot provide, the Court cannot merely assume fraudulent activity.

Even if Defendants could theoretically be liable for violations of Election Code sections 18620 and/or 18621, neither provision defines an offense that falls within the traditional scope of generic bribery, and—by extension—neither violation could serve as a RICO predicate act. As a general matter, payments made to a private individual in order to influence a governmental process do not constitute bribery. *United States v. Manzo*, 851 F. Supp. 2d 797, 805-15 (D.N.J. 2012) (payments offered to a private individual who is a candidate for public office meant to influence future governmental action do not qualify as bribery); *see also Percoco v. United States*, 598 U.S. 319 (2023) (in the context of "honest services" mail and wire fraud, a private person, even one who is between two stints in public office, has no duty to the public and cannot deprive the public of "honest services"); *Hollingsworth v. Perry*, 570 U.S. 693, 712-15 (2013)



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

(initiative proponents in California are private actors, not agents of the State).

Finally, irrespective of Plaintiffs' Elections Code claims, the conduct attributed to UHW and Regan also does not constitute generic commercial bribery. Plaintiffs do not plead that any supposed bribe requested by Defendants included money or traditionally "transferable" property. The offer to trade a non-monetary concession (such as an organizing-rights agreement) for withdrawal of an initiative or some other action that could influence government policy is not a recognized form of bribery. *See United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) (holding that, in the context of a federal bribery statute which prohibits offering or soliciting "anything of value" in exchange for an official action, "i[t] would not be plausible to describe a political trade of favors as an offer or attempt to bribe the other side"); *cf. Perrin v. United States*, 444 U.S. 37 (1979) (addressing the familiar commercial bribery scenario where the defendant was an agent of, and held a clear fiduciary duty toward, the "victim" business organization).

**5. <u>Plaintiffs generally fail to plead facts which would establish that Defendants were part of an "association-in-fact" enterprise</u>**

Plaintiffs do not plead sufficient facts to prove an association-in-fact enterprise, as is required under 18 U.S.C. § 1962(c). Crucially, section 1962(c) requires an enterprise that is separate and distinct from the named defendants. It is not a RICO violation for a defendant to run **itself** through a pattern of racketeering activity. Indeed, an association-in-fact enterprise within the meaning of RICO has three required structural features: a common purpose, relationships among those associated with the enterprise, and longevity to allow the associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938 (2009). To successfully plead the existence of an enterprise, a plaintiff must show "evidence of an ongoing organization, formal or informal" and "evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981). An "ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'" *United States v. Cagnina*, 697 F.2d 915, 921-22 (9th Cir. 1983).

The Ninth Circuit has specifically emphasized that an "enterprise" is "an entity separate and apart from the pattern of activity in which it engages." *Odom*, 486 F.3d at 551 (citations



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

omitted). A labor organization may itself be an "enterprise," but under RICO, the "enterprise" must be distinct from the "person" alleged to have engaged in the act of racketeering. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Said differently, a "defendant corporation, acting through its subsidiaries, agents, or employees … [cannot] be both the RICO 'person' and the RICO 'enterprise.'" *In re Toyota Motor Corp.*, 826 F. Supp.2d at 1202; *see also Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994); *Bd. Of City Comm'rs v. Liberty Grp.*, 965 F.2d 879, 886 (10th Cir. 1992) ("[O]fficers and employees of an organization cannot … constitute an association in fact separate from the organization itself"); *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 493 (6th Cir. 2013) (a parent corporation and its subsidiaries will not ordinarily satisfy the distinctness requirement); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226-228 (7th Cir. 1997) (same analysis applies to a manufacturer plus its dealers and other agents, or any subset of the members of the corporate family); *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1249 (10th Cir. 2016).

Plaintiffs make a conclusory allegation of an enterprise consisting of UHW, Regan, and the so-called "Union Affiliates" ("Affiliate A" and "Affiliate B"). Compl. ¶ 179. But the Complaint does not include any facts speaking to the structure of this alleged enterprise. The Complaint also does not identify the supposed common purpose of this enterprise. For example, Plaintiffs allege that, on one single occasion, the Union Affiliates and UHW jointly sent a proposed "Code of Conduct" to CPCA. Compl. ¶ 131. The Complaint does even not affirmatively state that the Union Affiliates had a shared purpose with UHW in making this proposal, however, and certainly does not actually identify what that shared purpose was. Indeed, Plaintiffs even admit that Regan was upset with the president of Affiliate B following the meeting with CPCA, which undercuts the existence of any potential shared purpose. *See* Compl. ¶ 143.

UHW is an independent entity that does not have any role in the affairs of "Affiliate A" or "Affiliate B." Nor does Regan control, or have any leadership authority, over those separate entities. Plaintiffs do not plead any contrary facts—instead, they actually admit that Regan and Affiliate B were at odds. It is impossible, then, for Regan and either of (or both of) the Union Affiliates to have conspired, with a common purpose, to extort CPCA's members.



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

**6. <u>Plaintiffs generally fail to plead facts which would establish that Defendants engaged in a pattern of criminal behavior</u>**

Plaintiffs do not plead sufficient facts to prove a "pattern" of criminal behavior, as is required to state a RICO claim. A "pattern" requires at least two predicate acts of racketeering over a ten-year period. *In re Toyota Motor Corp.*, 826 F.Supp.2d at1201 (C.D. Cal. 2011) (citing 18 U.S.C. §§ 1961(1), 1961(5)); *Boland v. Wasco, Inc.*, 50 F.Supp. 3d 1, 15 (D.D.C. 2014) (RICO claim against union pension fund dismissed, because it "failed to state a RICO violation claim because it fails to allege a pattern of racketeering activity."). The pattern element also requires a plaintiff to show a relationship between the predicate acts, and "the threat of continuing activity." *H.J. Inc. v. N.w. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Importantly, Hobbs Act caselaw clarifies that "multiple acts [committed] in furtherance of a single extortion episode constitute only a single predicate act of attempted extortion, not a pattern of two or more predicate acts." *Linens of Eur., Inc. v. Best Mfg.*, 2004 U.S. Dist. LEXIS 18575, at *54 (S.D.N.Y. Sep. 15, 2004) (citing *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992)).

Since Plaintiffs attribute a single objective to UHW and Regan—obtaining a union neutrality agreement from CPCA and the CHCs—Plaintiffs' allegations (*see* Compl. ¶¶ 114-54) definitionally constitute only a single act of attempted extortion. This single attempt is insufficient to create a "pattern." Plaintiffs may argue that the Complaint does in fact allege other prior "extortion" attempts by UHW (e.g., efforts to try to pressure nonprofit hospitals and dialysis centers). But crucially, Plaintiffs do not allege that any of these other attempts were made through the supposed criminal enterprise made up of UHW and the Union Affiliates, as would be required for those attempts to help satisfy RICO's pattern requirement. Any previous alleged extortion attempts made by UHW through Regan are also wholly irrelevant to § 1962(c)'s pattern requirement, because UHW and Regan (its elected president) are not a distinct enterprise.

**a. Plaintiffs do not meet the "continuity" element of RICO's "pattern" requirement**

Even if Plaintiffs could allege that Defendants committed multiple acts of attempted extortion through an association-in-fact enterprise, Plaintiffs still have not alleged facts sufficient to satisfy the "continuity" component of RICO's pattern requirement. *H.J., Inc.*, 492 U.S. at 229



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

(explaining that there are two ways to establish continuity: closed-ended continuity, which requires a closed period of repeated conduct over a certain period of time, and open-ended continuity, which applies to conduct that by its nature projects into the future with a threat of repetition); *see also Steam Press Holdings, Inc. v. Haw. Teamsters & Allied Workers Union, Local 996*, 302 F.3d 998, 1011 (9th Cir. 2002) (affirming district court's dismissal of RICO count which did not properly allege open-ended continuity requirement). The "threat" identified by Plaintiffs, Proposition 44, has not been a live issue for a sufficient amount of time to satisfy the closed-ended continuity requirements. Open-ended continuity is also impossible here, since Plaintiffs do not plead any specific facts demonstrating that UHW and Regan's extortive conduct would continue if CPCA acceded to Defendants' demands and signed an EPA.

**7. Plaintiffs' request for injunctive relief fails as a matter of law**

Any request for injunctive relief in this matter is foreclosed altogether. Only the federal government, and not a private party, may obtain injunctive relief under RICO. *See Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1086-88 (9th Cir. 1986).

Even if this were not true, Section 1 of the Norris-LaGuardia Anti-Injunction Act expressly prohibits the federal courts from issuing injunctions in cases "involving or growing out of a labor dispute." 29 U.S.C. § 101. Section 4 of the same statute includes an absolute prohibition on injunctive relief which would interfere with "publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." *Id*. at § 104(e). The definition of labor dispute in the Norris-LaGuardia Act is extremely broad, encompassing "any controversy … concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the parties stand in the proximate relation of employer and employee." 29 U.S.C. § 113; *see also New Negro Alliance v. Sanitary Grocery Co.*, 303 U.S. 552, 559-63 (1938) (finding a "labor dispute" in the context of a civil rights protest that involved neither a union nor a strike); *Burlington N. Santa Fe Ry Co. v. Int'l Bhd. of Teamsters Local 174*, 203 F.3d 703 (9th Cir. 2000) (en banc) (stating "labor dispute" is an "extraordinarily broad" concept which encompasses any dispute in which the employer-



WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

employee relationship is at the matrix of the controversy); *Hasbrouck v. Sheet Metal Workers,* 586 F.2d 691, 694 n.3 (9th Cir. 1978) (in relation to the identical definition of "labor dispute" found in the NLRA, see 29 U.S.C. § 152(9), "[r]arely have courts found concerted union activity to fall outside this broad definition … [w]here the union acts for some arguably job-related reason and not out of pure social or political concerns, a 'labor dispute' exists.").

Because Plaintiffs are clearly locked in a labor dispute with UHW related to UHW's desire to organize CHC employees, any proposed injunction preventing UHW from using certain lawful tactics to advance its organizing campaign would implicate Norris-LaGuardia.

### 8. Defendants' conduct is protected under the *Noerr-Pennington* doctrine

UHW and Regan's conduct, even as alleged in the Complaint, is protected under *Noerr-Pennington*, a First Amendment doctrine which insulates petitioning activity from civil or criminal liability unless the petitioning activity can be described as a "sham."[14]

"*Noerr-Pennington* is a label for a form of First Amendment protection; to say that one does not have *Noerr-Pennington* immunity is to conclude that one's petitioning activity is unprotected by the First Amendment." *Empress LLC v. City and County of San Francisco,* 419 F. 3d 1052, 1056 (9th Cir. 2005). "[T]hose who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV*, 437 F. 3d 923, 927 (9th Cir. 2006). Courts must not "'lightly impute to Congress an intent to invade freedoms protected by the Petition Clause[,]' and must give adequate 'breathing space' to the right to petition." *Sosa,* 437 F. 3d at 931-32 (internal citations omitted). *Noerr-Pennington* protects the act of petitioning and lobbying on behalf of a proposed ballot initiative; the act of negotiating concessions from opponents in exchange for withdrawal of that initiative; and even the act of threatening to withdraw petitions, cease petitioning activity, or propose additional petitions. *See Boone v. Redevelopment Agency of City of San Jose*, 841 F. 2d 886, 894 (9th Cir. 1988) (*Noerr-Pennington* covers misrepresentations because public officials "acting in

[14] "Although the doctrine was developed in the antitrust context, it has since been extended to other statutory schemes." *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1139 (9th Cir. 2013) (internal citations omitted).

the political sphere can 'accommodate false statements and reveal their falsity.'").

Plaintiffs attribute to UHW and Regan a pattern of conduct that can be simply described as an effort to petition for a change in California law that would require CHCs to spend their revenue more wisely—not on executive salaries and fancy artwork, but on actual patient care. Compl. ¶¶ 121, 123. Defendants helped obtain signatures for the purpose of getting Proposition 44 on the November 26 ballot and lobbied aggressively for its passage. *Id*. This is all protected conduct under *Noerr-Pennington*. Moreover, even if Defendants offered to remove Proposition 44 from the ballot in exchange for a signed EPA, such an arrangement is also protected. *See, e.g.*, *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1082 (C.D. Cal. 2010) ("communications between private parties related to litigation—including presuit demand letters and settlement offers—are entitled to immunity" under *Noerr-Pennington*); *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1027 (N.D. Cal. 2018) (same); *see also* Cal. Elec. Code § 9604, subd. (a)(1) (expressly providing that "any person may engage in good faith bargaining between competing interests to secure legislative approval of matters embraced in a statewide or local initiative or referendum measure, and the proponents may, as a result of these negotiations, withdraw the measure at any time before filing the petition …").

**9. <u>Because Defendants' conduct, as alleged, is arguably protected by the National Labor Relations Act, Plaintiffs' claim is preempted</u>**

The National Labor Relations Act "preempts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 276 (1971) (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959)); *see also Brennan v. Chestnut*, 973 F.2d 644, 646 (8th Cir. 1992) (discusses the application of *Garmon* in the RICO context). "*Garmon* preemption completely deprives the courts of power to act unless the [National Labor Relations Board] determines that the challenged conduct is not protected or prohibited by the NLRA." *Brennan*, 973 F.2d at 646 (citing *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 199 (1978)). Where a RICO claim implicates "generic law[s] prohibiting extortionate acts," and the reviewing court "must look to the labor laws" to define the



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
(213) 380-2344

predicate offense, the claim is preempted by the NLRA. *Brennan*, 973 F.2d at 646 (citing *Butchers' Union, Local No. 498 v. SDC Inv., Inc.*, 631 F. Supp. 1001 (E.D. Cal. 1986)); *see also Brown v. Keystone Consol. Indus., Inc.*, 680 F. Supp. 1212, 1224-26 (N.D. Ill. 1988) (concluding, after a thorough analysis, that RICO claims are not exempt from *Garmon* preemption).

In *Brennan*, "the pilots' RICO claim [was] preempted by *Garmon* as it involve[d] conduct **protected and prohibited** by the NLRA." 973 F.2d at 647 (emphasis added). Here, UHW and Regan's alleged conduct, which forms the basis of Plaintiffs' RICO theory, is at the very least *arguably* NLRA-protected. Several cases already cited above stand for the proposition that union's act of obtaining, or even merely seeking, a labor peace agreement from an employer is protected. *See, e.g.*, *Am. Nat'l Ins. Co.*, 343 U.S. at 401-02; *Marriot Corp.*, 961 F.2d at 1468; *Mulhall*, 667 F.3d at 1215; *Adcock*, 550 F.3d at 376; *Sage Hospitality*, 390 F.3d at 219. It is the role of the NLRB, in the first instance, to determine whether UHW's efforts to finalize the EPA were NLRA-protected **before** the Court can determine if Defendants violated RICO.

### C. IF THE COURT DECIDES TO DISMISS THE COMPLAINT, PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND

If the reviewing court concludes that a motion to dismiss should be granted, it must then decide whether to grant leave to amend. Leave to amend should be freely given when justice so requires, and "the court must remain guided by 'the underlying purpose of Rule 15 [Fed. R. Civ. Proc. 15(a)(2)] … [which is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). However, a court "may deny leave to amend due to 'undue delay, bad faith . . . [or] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Moreover, if, after careful consideration, it is clear that a claim cannot be cured by amendment, the court may dismiss without leave to amend. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *Cal. Architectural Bldg. Prod. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987).

As detailed above, Plaintiffs allegations are frivolous, without legal basis, without factual basis, highly inflammatory, and personal. This lawsuit is not a genuine attempt to exercise legal

rights, but rather an act of revenge against UHW and Regan for daring to organize CHC employees, and for daring to use California's initiative process to shape public policy for the benefit of patients, aggressively and without apology. The myriad defects in the Complaint cannot be remedied by pleading new or different facts. It is apparent from the face of the Complaint that Plaintiffs' have no facts—they are slinging mud, name-calling, and throwing a temper tantrum.

The Court should not indulge them.

## IV. CONCLUSION

For the reasons stated herein, the Court should dismiss Plaintiffs' complaint, without leave to amend, pursuant to Rule 12(b)(1) and Rule 12(b)(6).

Dated: November 23, 2026

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By: */s/ William T. Hanley*
BRUCE A. HARLAND
WILLIAM T. HANLEY

*Attorneys for Defendants*
*SERVICE EMPLOYEES INTERNATIONAL UNION – UNITED HEALTHCARE WORKERS WEST and DAVE REGAN*